FILED

09 FEB 18 AM 9:44

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Mag. Case Number: _____ |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR VIOLATION OF |
| | ) | |
| v. | ) | Title 21, U.S.C., Sections 841 & 846 - Conspiracy to Distribute Controlled Substances |
| Uriel JUAREZ-Cortez | ) | |
| | ) | |
| Defendant, | ) | '09 MJ 0538 |
| _____ | ) | |

The undersigned complaint being duly sworn states:

Beginning at a date unknown to the grand jury and continuing up to and including February 18, 2009, within the Southern District of California, and elsewhere, defendant Uriel JUAREZ-Cortez did knowingly and intentionally conspire together with other persons, known and unknown to the grand jury to distribute controlled substances, to wit: **approximately 1569.2 grams of Oxycodone (Schedule II), approximately 80,880 units of Ritalin (Methylphenidate) (Schedule II), approximately 335.98 grams of Hydrocodone (Schedule III), Schedule II and III Controlled Substances;** in violation of Title 21, United States Code, Sections 841 and 846.

**Dated: February 18, 2009**

Special Agent Jason F. Dunham
Immigration and Customs Enforcement

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS _____ DAY OF _____, 2009.

MAGISTRATE JUDGE

DOA
02-17-09

## AFFIDAVIT

Jason F Dunham, being duly sworn, states:

1. I am a Special Agent with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") and have been so employed since about July 2004. I am currently assigned to the ICE Financial group and am primarily tasked with investigating financial crimes such as money laundering and bulk cash smuggling. I have received over 100 hours of advanced training in bulk cash smuggling and money laundering techniques, and I have conducted several investigations of such crimes. I have used many investigative techniques. For example, I have interviewed witnesses and informants. During the course of my experience, I have conducted searches and arrests. I have obtained financial records and information through a variety of methods including database checks and subpoenas, and I have analyzed such information for indicia of bulk cash smuggling and money laundering. I have also worked and consulted with numerous law enforcement officers experienced in drug trafficking, bulk cash smuggling and money laundering investigations. This training and experience forms the basis for any opinions expressed below.

2. This affidavit supports an application for a criminal complaint charging a conspiracy to distribute a controlled substance in violation of (Title 21, U.S.C. §§ 841 and 846).

3. The following is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, interviews, subpoenaed and public records, database checks, searches and other investigation. Since this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included each and every fact I know about this

/ / /

/ / /

/ / /

investigation. Rather, I set forth only those facts necessary to establish a foundation for the requested criminal complaint. Dates and times are, moreover, approximate.

## PROBABLE CAUSE

### Introduction

4. On or about September 6, 2006, February 15, 2008, July 18, 2008 and February 5, 2009, federal search warrants were issued in the Southern District of California for e-mail messages and other electronic information from internet service provider California Regional Internet ("CARI") including information relating websites including *www.fforg.us*, *www.feelfreedom.org*, *www.silencehealth.com*, *www.albertpharma.com*, *www.fillinghealthy.com*, *www.heartline.us* and *www.secretproducts.net*. Specifically, the search warrant from September 6, 2006 indicated that at least 409 purchase orders totaling $175,727.00 in DEA Schedule II-IV Controlled Substances and prescription only pharmaceuticals were placed through websites *www.fillinghealthy.com*, *www.silencehealth.com* and *www.albertpharma.com*. The subsequent search warrants executed on February 15, 2008, July 18, 2008 and February 5, 2009 showed that the abovementioned sites as well as *www.fforg.us*, *www.feelfreedom.org*, *www.secretproducts.net* and *www.heartline.us* were continuing to fill purchase orders for individuals purchasing pharmaceuticals online.

5. Based on information provided by CARI, agents were able to determine the amount of scheduled pharmaceutical drugs shipped by the organization. Specifically, during the course of the alleged conspiracy, based upon actual e-mailed orders and actual e-mailed confirmations, agents determined *inter alia* that the organization filled orders for pharmaceuticals containing

///

///

approximately 1569.2 grams of Oxycodone, approximately 80,880 units of Ritalin (Methylphenidate)), approximately 355.98 grams of Hydrocodone, Schedule II and III Controlled Substances. These figures represent only a small portion of what the organization actually sent to purchasers.

6. Based upon further review of information received from the CARI search warrants, Agents have been able to determine how this drug trafficking organization ("DTO") accepts orders and distributes Scheduled pharmaceuticals. A client/purchaser, for example, visits any of the aforementioned websites and places an order for pharmaceutical drugs. After the order is placed the DTO sends the client a confirmation e-mail message with an order number and with instructions about how to send payment along with the provided order number. Once payment is received the organization imports the drugs and subsequently ships the pharmaceutical drugs to the client *via* a commercial mail carrier. The client/purchaser is then provided with a tracking number for the package.

**Role of Angel Luevano-Ramirez ,**

7. All of the above mentioned websites, aside from BestPharmaRx, are registered to Angel Luevano ('**LUEVANO**"). On February 10, 2009, **LUEVANO** was arrested at his residence on 5228 Bay Crest Lane, San Diego, California. During a post-Miranda interview, **LUEVANO** admitted *inter alia* 1) to registering and maintaining the aforementioned CARI websites, 2) to having cashed checks from purchasers, 3) to receiving approximately $15,000.00 dollars a month from the organization as compensation for his services.

/ / /

/ / /

/ / /

**Role of Juarez-CORTEZ,**

8. During the course of this investigation, information from search warrants served on CARI and Yahoo, Inc. revealed a number of bank accounts used by DTO to receive funds *via* wire transfer or counter deposit as payments for controlled substances. In order to retrieve these funds from the aforementioned accounts, debits were made *via* checks written to numerous DTO money couriers including Uriel JUAREZ-Cortez ("JUAREZ"). These checks were subsequently negotiated for cash at the banks from which they were drawn. On February 17, 2009, JUAREZ was interviewed (post-<u>Miranda</u>) at the San Ysidro, California, Port of Entry regarding his involvement in cashing such checks which represented proceeds of the DTO's illegal controlled substance distribution.

9. During this post-<u>Miranda</u> interview, JUAREZ stated that he cashed such checks on behalf of a DTO that illegally imported and sold Scheduled pharmaceutical drugs. JUAREZ stated that "Pepe" would give him checks and advised him [JUAREZ] to hurry up and cash them, because they ["Pepe," et al.] needed the money to purchase additional drugs to fill additional orders. JUAREZ then stated that he would cash these checks in the United States and return the money to "Pepe" who was in Mexico. JUAREZ also explained that another individual identified as "Chikis" would smuggle drugs into the United States from Mexico for the DTO. JUAREZ ultimately stated he knew that what he was doing was illegal. JUAREZ then identified "Chikis" as co-conspirator Rosario ASTORGA-Espinoza ("ASTORGA "); charged elsewhere (09-MJ-0445-RBB). ASTORGA was arrested on February 10, 2009 while attempting to smuggle a large amount of Scheduled pharmaceuticals through the San Ysidro Port of Entry.

/ / /

/ / /

/ / /

10. JUAREZ also admitted to receiving what appear to be e-mail purchase orders for Scheduled pharmaceuticals. Juarez then explained that, pursuant to his duties within the DTO, he delivered these purchase orders to "Pepe." JUAREZ explained that the monetary amounts listed in the purchase orders indicated to "Pepe" how much money in checks he [Pepe] would need to have JUAREZ and other DTO money couriers cash from the aforementioned bank accounts. These particular proceeds would then be used to acquire additional drugs for distribution.

11. WHEREFORE, I request that the court issue a criminal complaint for the **Juarez-CORTEZ**.

JASON DUNHAM
Special Agent
U.S. Immigration & Customs Enforcement

Subscribed and sworn to me before
this ___ day of February, 2009

HON. RUBEN B. BROOKS
United States Magistrate Judge